IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| LAWANDA BROOKS, ) | CASE NO. 2:13-cv-87 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

OPINION AND ORDER

This matter is before the court on petition for judicial review of the decision of the Commissioner filed on January 9, 2013. For the following reasons, the decision of the Commissioner is **AFFIRMED**.

*Background*

The plaintiff, Lawanda Brooks, filed an application for Disability Insurance Benefits and Supplemental Security Income on March 11, 2008, alleging a disability onset date of September 22, 2005. (Tr. 59). Brooks' application initially was denied on October 2, 2008, and again upon reconsideration on January 22, 2009. (Tr. 59). Brooks subsequently filed a timely request for a hearing on January 22, 2009. (Tr. 59). A hearing was held on March 17, 2010, before Administrative Law Judge ("ALJ") Dennis R. Kramer, wherein the ALJ found Brooks disabled from September 22, 2005, through June 30, 2006. (Tr. 59-68). On November 4, 2010, the Appeals Council found that the ALJ's decision constituted an error of law because he found that Brooks was disabled for a closed period of time lasting *less than* twelve months, and it remanded the case back to the ALJ. (Tr. 71-72). A second

1

hearing was held on July 11, 2011, before ALJ Kramer. (Tr. 16). Brooks, Medical Expert Dr. Ashok G. Jilhewal, and Vocational Expert Thomas Grzesik, testified at the hearing. (Tr. 16).

On September 23, 2011, the ALJ found that Brooks was not disabled under Sections 216(i) and 223(d) of the Social Security Disability Act and issued a decision denying benefits. (Tr. 16-29). At step one of the sequential analysis for determining whether a claimant is disabled, the ALJ determined that Brooks "has not engaged in substantial gainful activity since September 22, 2005, the alleged onset date." (AR. 18). At step two, the ALJ determined that "[Brooks] has the following severe impairments: hypertension and anemia secondary to pregnancy complications; chronic headaches; arthritis, obesity; asthma and noncardiac atypical chest pain." (Tr. 19). At step three, the ALJ concluded that Brooks "does not have an impairment or combination of impairments that meets or medically equals the severity of the one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR 404.1520(d), 404.1526, 416.9209(d), 416.925 and 416.926)." (Tr. 19).

The ALJ then found that "[Brooks] has the residual functional capacity to perform less than the full range of sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a). [She] could lift/carry a maximum of 10 pounds; sit a total of eight hours in an eight-hour workday and stand/walk about two hours in an eight-hour workday." (Tr. 23). In addition, the ALJ determined that "she could frequently reach, handle, finger, feel, push/pull bilaterally and use her feet to operate foot controls frequently. She could climb stairs occasionally, balance and stoop; climb ramps frequently and never climb ladders or scaffolds, kneel, crouch and crawl." (Tr. 23). In making this finding, the ALJ summarized Brooks' testimony. Brooks stated that due to the arthritis in her hands, she dropped things about two times a day and experienced sharp pain and numbness in her fingertips and wrists after dropping an item. (Tr. 20, 24). Further, she stated that her hands swelled to such a degree that she could not pick up coins from a table and dress, zip, or button clothes without assistance. (Tr. 20, 24). She testified that she also

experienced migraines every other day and that due to the severity of the migraines she had to lie down for about one to five hours, even with medication. (Tr. 20, 24). Brooks additionally reported that she experienced chest pain every three to four days for two to four hours at one time and needed to use her inhaler for her asthma every other day. (Tr. 20). Brooks stated that she was limited to carrying a half gallon of milk, walking one block, and standing 20 minutes before needing to sit and sitting for 20 minutes before needing to stand up. (Tr. 20).

The ALJ found that although Brooks' medically determinable impairments reasonably could be expected to cause the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were inconsistent with the Residual Functional Capacity ("RFC") determination. (Tr. 24). The ALJ noted that all diagnostic testing for Brooks came back normal. (Tr. 21). The ALJ explained that much of the medical documentation in the record related to complications from Brooks' pregnancy in March 2006, however the record revealed that her blood pressure and hemoglobin levels were well within normal limits by 2008. (Tr. 21). Moreover, the ALJ explained that the change in Brooks' RFC from less than light work to less than sedentary as of September 28, 2006, was because of Brooks' increase in weight and its impact on her joints. (Tr. 24).

The ALJ then summarized Brooks' treatment history with Dr. Tarek Kudaimi and Dr. Kevin Joyce, Brooks' rheumatologists. (Tr. 25). In February 2007, Brooks had a consultation with Dr. Kudaimi for her ongoing hand pain. (Tr. 24). Dr. Kudaimi suggested that Brooks might have rheumatoid arthritis, although no evidence of deformities in her extremities was shown. (Tr. 24). Brooks was using corticosteriod injections at this time to relieve pain in her hands. (Tr. 24). In December 2007, Brooks stopped seeing Dr. Kudaimi, after relocating to Illinois, until 2010. (Tr. 24). In September 2009, Brooks saw a specialist, Dr. Joyce, for a further consult. (Tr. 24). All diagnostic

3

testing, including blood work, x-rays, and bone density scans, were within normal limits, with the exclusion of some mild narrowing of her bilateral knees. (Tr. 24-25).

The ALJ next addressed the medical expert's assessment of Brooks and the results of the consultative physical examination, which both suggested that Brooks could perform a limited range of sedentary work. (Tr. 25). Dr. Jilhewar noted that Brooks' blood work was not indicative of rheumatoid arthritis and that the blood work did not reveal any signs of the CCP anti-body or anti-nuclear anti-body. (Tr. 25). However, the ALJ gave Brooks the "benefit of the doubt" and found that it was entirely possible that Brooks had some sort of arthritis. (Tr. 25). In relation to Brooks' headaches, the ALJ relied on Dr. Jilhewar's assessment and found that although Brooks may have experienced headaches after 2006, they were not intractable. (Tr. 25). The ALJ discussed Brooks' complaints of atypical chest pain and concluded that based on the most recent ECHO test, Brooks' ejection fraction was now within a normal range at 65-70%. (Tr. 25). Moreover, in 2008 Brooks participated in a pulmonary function test which yielded relatively normal results and indicated no need for bronchodilator treatment. (Tr. 25).

On physical examination, Brooks was categorized as morbidly obese at 280 pounds with a blood pressure level of 120/70. (Tr. 25). Dr. Jilhewar noted that Brooks appeared to be comfortable and exhibited no signs of respiratory problems. (Tr. 25). Brooks' upper and lower extremities were not swollen or stiff, and she exhibited a full range of motion in all lower extremities. (Tr. 25). She had difficulty with stooping and squatting. (Tr. 25). Her fine finger manipulative ability was good. (Tr. 25). Given Brooks' increase in weight and its effect on her arthritic joints, the ALJ gave the medical expert's opinion substantial weight. (Tr. 25).

At step four, the ALJ determined that Brooks had no past relevant work based on the fact that she had not engaged in work at a "substantial gainful activity level." (Tr. 27). At step five, the ALJ

4

determined that there were other jobs in the national economy that Brooks could perform, including representative occupations such as call-out operator (8,000 jobs regionally), information clerk (7,500 jobs regionally), and order clerk (1,000 jobs regionally).

Brooks filed her petition for judicial review with this court on December 20, 2013, arguing that the Commissioner failed sufficiently to account for Brooks' headaches, erred in evaluating Brooks' credibility, and failed to give sufficient weight to the function report completed by Brooks' mother.

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); ***Moore v. Colvin***, 743 F.3d 1118, 1120-21 (7th Cir. 2014); ***Bates v. Colvin***, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence"); ***Pepper v. Colvin***, 712 F.3d 351, 361-62 (7th Cir. 2013). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept to support such a conclusion." ***Richardson v. Perales***, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (*quoting* **Consolidated Edison Company v. NRLB**, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see* ***Bates,*** 736 F.3d at 1098; ***Pepper,*** 712 F.3d at 361-62; ***Jens v. Barnhart***, 347 F.3d 209, 212 (7th Cir.2003); ***Sims v. Barnhart***, 309 F.3d 424, 428 (7th Cir. 2002). An ALJ's decision must be affirmed if the findings are supported by substantial evidence and if there have been no errors of law. ***Roddy v. Astrue,*** 705 F.3d 631, 636 (7th Cir. 2013)*;* ***Rice v. Barnhart***, 384 F.3d 363, 368-69 (7th Cir.2004); ***Scott v. Barnhart***, 297 F.3d 589, 593 (7th Cir. 2002). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." ***Lopez***,

336 F.3d at 539.

Disability and supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

**42 U.S.C. § 423(d)(1)(A)**.

The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. §§ 404.1520, 416.920**. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R. §§ 404.1520(b), 416.920(b)**. If she is, the claimant is not disabled and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments which "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c), 416.920(c)**; *see* ***Williams v. Colvin***, 13-3607 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1.** If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. §§ 404.1520(e), 416.920(e)**. However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to

establish that the claimant, in light of her age, education, job experience and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f)**.

Brooks first argues that the ALJ's residual functional assessment failed sufficiently to account for the her severe headache impairment in determining that she was not disabled. "A decision that lacks adequate discussion of the issues will be remanded." *Moore v. Colvin*, 743 F.3d 1118, 1120 (7th Cir. 2014). The ALJ cannot ignore evidence that undermines his ultimate conclusions. *Moore*, 743 F.3d at 1123 ("The ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected.") (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)). However, "[t]he ALJ is not required to address every piece of evidence or testimony presented, but he must provide a 'logical bridge' between the evidence and his conclusions." *Getch v. Astrue,* 539 F.3d 473, 480 (7th Cir. 2008) (quoting *Clifford v. Apfel*, 227 F.3d 863 (7th Cir. 2000)); *Moore*, 743 F.3d at 1123.

Here, the ALJ satisfied his duty by providing a narrative discussion of Brooks' medical history and developing the record in his ultimate RFC finding. First, the ALJ acknowledged that Brooks had a history of migraine headaches, however, as the record indicates, Brooks had not experienced episodes of severe discomfort since 2006. (Tr. 25). The ALJ determined that after 2006 the migraines that Brooks experienced were not categorized as intractable. (Tr. 21-25). Second, the ALJ cited to numerous post-2006 medical tests, including an evaluation for headaches, a MRI, a MRA, CT of head and sinuses, and an EEG, all of which yielded normal results. (Tr. 21). The ALJ referenced Brooks' visit with a neurologist in 2006, during which time the neurologist noted that after an extensive workup, all results were normal. Brooks maintains that she continued to have severe migraines and

that the side effects of these migraines, such as nausea, did not support the ALJ's finding that she could sit for two hours or stand for thirty minutes during a workday. (Tr. 25). However, the ALJ found this to be wholly inconsistent with her statements to the medical examiner in which Brooks stated that her migraines did not cause nausea or sensitivity to light/noise and further found that Brooks infrequently complained of headaches to her treating physicians after 2006. (Tr. 25). The ALJ, nonetheless, accounted for Brooks headaches by limiting her work to less than the full range of sedentary work and finding that she must be able to alternate positions fairly frequently in a workday. (Tr. 26). Because the record reflects that the ALJ considered Brooks' headaches and provided a thorough discussion of her treatment and its affect on her functioning, the court does not find that the ALJ erred.

Brooks next argues that the ALJ improperly evaluated her credibility concerning her headaches and arthritis. This court will sustain the ALJ's credibility determination unless it is patently wrong and not supported by the record. ***Bates v. Colvin***, 736 F.3d 1093, 1098 (7th Cir. 2013); ***Schmidt v. Astrue***, 496 F.3d 833, 843 (7th Cir. 2007); ***Prochaska v. Barnhart***, 454 F.3d 731, 738 (7th Cir. 2006) (Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported ... can the finding be reversed). The ALJ's unique position to observe a witness entitles his opinion to great deference. ***Nelson v. Apfel***, 131 F.3d 1228, 1237 (7th Cir. 1997); ***Allord v. Barnhart***, 455 F.3d 818, 821 (7th Cir. 2006). However, if the ALJ does not make explicit findings and does not explain them in a way that affords meaningful review, the ALJ's credibility determination is not entitled to deference. ***Steele v. Barnhart***, 290 F.3d 936, 942 (7th Cir. 2002). Further, when such determinations rest on objective factors or fundamental implausibilities rather than subjective considerations [such as a claimant's demeanor], appellate courts have greater freedom to review the ALJ's decision. ***Clifford v. Apfel***, 227 F.3d 863, 872 (7th Cir. 2000); *see* ***Bates***, 736 F.3d at 1098.

The ALJ must determine a claimant's credibility only after considering all of the claimant's

symptoms, including pain, and the extent to which [the claimant's] symptoms reasonably can be accepted as consistent with the objective medical evidence and other evidence. **20 C.F.R.§ 404.1529(a)**; *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) (subjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record; *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004). If the claimant's impairments reasonably could produce the symptoms of which the claimant is complaining, the ALJ must evaluate the intensity and persistence of the claimant's symptoms through consideration of the claimant's medical history, the medical signs and laboratory findings, and statements from [the claimant's] treating or examining physician or psychologist, or other persons about how [the claimant's] symptoms affect [the claimant]. **20 C.F.R.§ 404.1529(c)**; *Moore*, 743 F.3d at 1122; *Schmidt v. Barnhart*, 395 F.3d 737, 746-47 (7th Cir. 2005) (These regulations and cases, taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from merely ignoring the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding).

Although a claimant's complaints of pain cannot be totally unsupported by the medical evidence, the ALJ may not make a credibility determination solely on the basis of objective medical evidence. SSR 96-7p, at 1; *see Moore*, 743 F.3d at 1122*; Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (If pain is disabling, the fact that its source is purely psychological does not entitle the applicant to benefits). Rather, if the

> [c]laimant indicates that pain is a significant factor of his or her alleged inability to work, the ALJ must obtain detailed descriptions of the claimant's daily activities by directing specific inquiries about the pain and its effects to the claimant. She must investigate all avenues presented that relate to pain, including claimant;s prior work record, information and observations by treating physicians, examining physicians, and third parties. Factors that must be considered include the nature and intensity of the claimant's pain, precipitation and aggravating factors, dosage and effectiveness of any pain medications, other treatment for relief of pain, functional restrictions, and the

claimant's daily activities. (internal citations omitted).

*Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994); *see* *Zurawski v. Halter*, 245 F.3d 881, 887-88 (7th Cir. 2001).

In addition, when the ALJ discounts the claimant's description of pain because it is inconsistent with the objective medical evidence, he must make more than "a single, conclusory statement . . . . The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, at 2; *see* *Zurawski*, 245 F.3d at 887; *Diaz v. Chater*, 55 F.3d 300, 307-08 (7th Cir. 1995) (finding that the ALJ must articulate, at some minimum level, his analysis of the evidence). He must build an accurate and logical bridge from the evidence to [his] conclusion. *Zurawski*, 245 F.3d at 887 (*quoting* *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). A minor discrepancy, coupled with the ALJ's observations, is sufficient to support a finding that the claimant was incredible. *Bates*, 736 F.3d at 1099. However, this must be weighed against the ALJ's duty to build the record and not to ignore a line of evidence that suggests a disability. *Bates,* 736 F.3d at 1099.

Brooks' statements concerning the severity of pain experienced as a result of her rheumatoid arthritis lacked validation by objective medical evidence, thus the ALJ made a finding on the credibility of the Brooks' statements based on consideration of the entire record. After careful consideration, the ALJ found that Brooks' medically determinable impairments reasonably could be expected to cause the alleged symptoms; however, Brooks' statements concerning their limiting affect were not credible to the extent they are inconsistent with the objective evidence of the record and the RFC assessment. (Tr. 25-27) The ALJ cited a variety of factors that supported his finding. (Tr. 25-26). First, the ALJ referenced the results of the consultative examination, particularly the finding that

Brooks had "good fine finger manipulative abilities." (Tr. 26). The ALJ found this finding to contradict Brooks' testimony that she was unable to zip or button items independently. (Tr. 26). Second, the ALJ discussed Brooks' testimony that she could not cook or wash the dishes and was limited to the "little things" like making the bed. (Tr. 26). The ALJ found this statement to conflict with Brooks' activities of daily living report. (Tr. 26). In the daily living report Brooks' identified numerous things she was able to do such as cooking, laundry, sewing, reading, and house cleaning. (Tr. 26). The ALJ ultimately found that the discrepancies regarding Brooks' testimony and her reported activities of daily living support the finding that she was less than credible. (Tr. 26).

Lastly, Brooks argues that the ALJ did not properly evaluate the Function Report completed by Brooks' mother, Charnell Scott, pursuant to SSR 06-03p. According to SSR 06-3p, information from non-medical sources may be used to show the severity of an individual's impairment, how it effects the individual's impairment, and the effects on the individual's ability to function. With respect to the consideration given to the opinions of "other sources" SSR 06-03p states:

> Information from these "other sources" cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an acceptable medical source' for this purpose . . . [but] the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

SSR 06-03p. "[T]he ALJ did not necessarily have to independently evaluate" evidence derived from a source other than an acceptable medical source. **Rasvick v. Astrue**, No. 1:11-CV-00283, 2012 WL 3779124, at *16 (N.D. Ind. Aug. 30, 2012). Moreover, where testimony merely "corroborated [claimant's] own testimony concerning the limitations caused by impairments . . . testimony [does] not constitute a separate line of evidence that the ALJ needed to specifically evaluate." **Rasvick,** 2012 WL 3779124, at *16.

11

The ALJ explained that Scott was not an acceptable medical source within the regulatory definition and accorded little weight to her comments pursuant to "other source" evidence SSR 06-03p. (Tr. 26-27). The ALJ explained that Scott's function report was consistent with Brooks' testimony and offered no separate line of evidence. (Tr. 23). Further, the ALJ noted that Scott's report did not provide medically determinable statements and thus failed to refute Dr. Jilhewar's medical opinion. The ALJ sufficiently considered Scott's report given the nature of Scott's statements. *See* **Herron v. Shalala**, 19 F.3d 329, 337 (7th Cir. 1994) (explaining that the ALJ addressed opinion evidence of claimant's wife in relation to the consistent testimony of claimant). In addition, Brooks argues that her mother's report was consistent with treatment records from Drs. Joyce, Kudaimi, and Corcoran; however, the ALJ agreed with the findings of these physicians. (Tr. 19-27). The ALJ's opinion is consistent with these medical sources' treatment records. The ALJ addressed all opinions of record in his final determination of the case, and it is not clear how further consideration of Scott's testimony would change the outcome. Thus, the ALJ sufficiently discussed the record as a whole.

Based on the foregoing reasons, the decision of the Commissioner is **AFFIRMED**. ENTERED this 5th day of November, 2014.

/s/ Andrew P. Rodovich
United States Magistrate Judge